UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

MICHAEL RUBIN,

               Plaintiff,

       v.

GARDNER DENVER HOLDINGS, INC.,
PETER M. STAVROS, BRANDON F.
BRAHM, ELIZABETH CENTONI,
WILLIAM DONNELLY, JOHN
HUMPHREY, MARC E. JONES, WILLIAM
E. KASSLING, MICHAEL V. MARN,
VICENTE REYNAL, NICKOLAS VANDE
STEEG, and JOSHUA T. WEISENBECK,

               Defendants.

---

Case No._____

**COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS**

JURY TRIAL DEMANDED

---

       Plaintiff Michael Rubin ("Plaintiff"), by and through his undersigned counsel, for his complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

**NATURE AND SUMMARY OF THE ACTION**

       1.    This is an action brought by Plaintiff against Gardner Denver Holdings, Inc. ("Gardner Denver" or the "Company") and the members of its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, and to enjoin the vote on the proposed merger of Gardner Denver with the industrial segment of Ingersoll-Rand plc ("Ingersoll Rand"), through Ingersoll Rand's wholly owned subsidiary, Ingersoll-Rand U.S.

HoldCo, Inc. ("Ingersoll Rand Industrial") and Gardner Denver's wholly owned subsidiary Charm Merger Sub, Inc. ("Merger Sub") (the "Proposed Transaction").

2.       On April 30, 2019, Gardner Denver and Ingersoll Rand issued a joint press release announcing that they had entered into an Agreement and Plan of Merger dated April 30, 2019 (the "Merger Agreement").  Under the terms of the Merger Agreement, Ingersoll Rand will cause specific assets and liabilities of its industrial segment to be transferred to Ingersoll Rand Industrial and distribute the shares of Ingersoll Rand Industrial common stock to Ingersoll Rand's stockholders.  Gardner Denver will issue an aggregate number of shares of its common stock to Ingersoll Rand shareholders which will result in Ingersoll Rand shareholders owning approximately 50.1% of the shares of Gardner Denver common stock outstanding upon consummation of the Proposed Transaction ("Merger Consideration").

3.       On January 16, 2020, Gardner Denver filed a Form 424B3 (the "Prospectus") with the SEC.  The Prospectus, which recommends that Gardner Denver stockholders vote in favor of the Proposed Transaction, omits or misrepresents material information concerning, among other things: (i) the Company's, Ingersoll Rand's and the pro forma company's financial projections; (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by the Company's financial advisor, Robert W. Baird & Co. ("Baird"); and (iii) Baird's and Citigroup Global Markets Inc.'s ("Citi") potential conflicts of interest. Defendants authorized the issuance of the false and misleading Prospectus in violation of Sections 14(a) and 20(a) of the Exchange Act.

4.       In short, unless remedied, Gardner Denver's public stockholders will be irreparably harmed because the Prospectus's material misrepresentations and omissions prevent them from making a sufficiently informed voting decision on the Proposed Transaction.  Plaintiff

seeks to enjoin the stockholder vote on the Proposed Transaction unless and until such Exchange Act violations are cured.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

6.      This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.      Venue is proper in this District pursuant to 28 U.S.C. § 1391 because defendants are found or are inhabitants or transact business in this District.  Gardner Denver's common stock trades on the New York Stock Exchange, which is headquartered in this District, rendering venue in this District appropriate in this District.

## THE PARTIES

8.      Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of Gardner Denver.

9.      Defendant Gardner Denver is a Delaware corporation, with its principal executive offices located at 222 East Erie Street, Suite 500, Milwaukee, Wisconsin 53202.  The Company is a leading global provider of mission-critical flow control and compression equipment and associated aftermarket parts, consumables and services, which it sells across multiple attractive end-markets within the industrial, energy and medical industries.  Gardner Denver's common stock trades on the New York Stock Exchange under the ticker symbol "GDI."

10.     Defendant Peter M. Stavros ("Stavros") is Chairman of the Board and has been a director of the Company since 2013.

11.     Defendant Brandon F. Brahm ("Brahm") has been a director of the Company since July 2013.

12.     Defendant Elizabeth Centoni ("Centoni") has been a director of the Company since December 2018.

13.     Defendant William P. Donnelly ("Donnelly") has been a director of the Company since May 2017.

14.     Defendant John Humphrey ("Humphrey") has been a director of the Company since February 2018.

15.     Defendant Marc E. Jones ("Jones") has been a director of the Company since December 2018.

16.     Defendant William E. Kassling ("Kassling") has been a director of the Company since August 2013.

17.     Defendant Michael V. Marn ("Marn") has been a director of the Company since August 2013.

18.     Defendant Vicente Reynal ("Reynal") has been President, Chief Executive Officer ("CEO") and a director of the Company since January 2016.

19.     Defendant Nickolas Vande Steeg ("Vande Steeg") has been a director of the Company since August 2013.

20.     Defendant Joshua T. Weisenbeck ("Weisenbeck") has been a director of the Company since July 2013.

21.     Defendants identified in paragraphs 10-20 are referred to herein as the "Board" or the "Individual Defendants."

## OTHER RELEVANT ENTITIES

22.     Ingersoll Rand is an Irish-domiciled diversified industrial manufacturing company formed in 1905 by the merger of Ingersoll-Sergeant Drill Company and Rand Drill Company. Headquartered in Swords, Ireland, it is a global diversified firm providing products, services and solutions to enhance the quality and comfort of air in homes and buildings, transport and protect food and perishables, secure homes and commercial properties, and increase industrial productivity and efficiency.  Ingersoll Rand's common stock trades on the New York Stock Exchange under the ticker symbol "IR."

23.     Ingersoll Rand Industrial is a wholly owned subsidiary of Ingersoll Rand.

24.     Merger Sub is a wholly owned subsidiary of Gardner Denver.

## SUBSTANTIVE ALLEGATIONS

**Background of the Company**

25.     Gardner Denver is a leading global provider of mission-critical flow control and compression equipment and associated aftermarket parts, consumables and services, which Gardner Denver sells across multiple attractive end-markets within the industrial, energy and medical industries.  Its broad and complete range of compressor, pump, vacuum and blower products and services, along with its application expertise and over 155 years of engineering heritage, allows Gardner Denver to provide differentiated product and service offerings for its customers' specific uses.  Gardner Denver products are sold under a collection of market-leading brands, including Gardner Denver, CompAir, Nash, Emco Wheaton, Robuschi, Elmo Rietschle and Thomas.  Gardner Denver has sales in more than 175 countries and its diverse customer base utilizes its products across a wide array of end-markets, including industrial manufacturing,

energy (with particular exposure to the North American upstream land-based market), transportation, medical and laboratory sciences, food and beverage packaging and chemical processing.

26.     The Company operates in three strategic segments: Industrials, Energy, and Medical.   In the Company's Industrials segment, Gardner Denver designs, manufactures, markets, and services a broad range of air compression, vacuum and blower products, including associated aftermarket parts, consumables and services, across a wide array of technologies and applications for use in diverse end-markets.

27.     Through the Company's Energy segment, Gardner Denver designs, manufactures, markets and services a diverse range of positive displacement pumps, liquid ring vacuum pumps, compressors and integrated systems, engineered fluid loading and transfer equipment and associated aftermarket parts, consumables and services.   These products serve customers across upstream, midstream and downstream energy markets, among others.

28.     In the Company's Medical segment, Gardner Denver designs, manufactures and markets a broad range of highly specialized gas, liquid and precision syringe pumps and compressors that are specified by medical and laboratory equipment suppliers and integrated into their final equipment for use in applications, such as oxygen therapy, blood dialysis, patient monitoring, laboratory sterilization and wound treatment, among others.

**The Proposed Transaction**

29.     On April 30, 2019, Gardner Denver and Ingersoll Rand issued a joint press release announcing the Proposed Transaction.   The press release states, in relevant part:

> MILWAUKEE, Wis. & SWORDS, Ireland--(BUSINESS WIRE)--Gardner Denver Holdings, Inc. (NYSE:GDI) and Ingersoll-Rand plc (NYSE:IR) today announced that they have entered into a definitive agreement pursuant to which Ingersoll Rand will separate its Industrial segment ("Ingersoll Rand Industrial") by way of a spin-off to Ingersoll Rand's shareholders and then combine it with

Gardner Denver, creating a global leader in mission-critical flow creation and industrial technologies ("IndustrialCo"). The HVAC and transport refrigeration assets of the current Ingersoll Rand will become a pure play global leader in climate control solutions for buildings, homes and transportation ("ClimateCo").

IndustrialCo will be composed of the entirety of Gardner Denver and Ingersoll Rand Industrial, including, subject to closing, Ingersoll Rand's pending acquisition of Precision Flow Systems ("PFS"), which is expected to close by mid-2019. Gardner Denver's CEO, Vicente Reynal, and executives from both companies, will lead IndustrialCo. IndustrialCo is expected to be called Ingersoll Rand and trade under Ingersoll Rand's existing ticker (NYSE: IR). IndustrialCo will operate a diverse portfolio of iconic brands, including Gardner Denver. The Board of IndustrialCo will be led by Gardner Denver Chairman Peter Stavros. Michael W. Lamach, Ingersoll Rand's Chairman and CEO, along with the current Ingersoll Rand executive team, will continue to lead ClimateCo, which is expected to be renamed.

Under the terms of the agreement, which has been unanimously approved by the Boards of Directors of Ingersoll Rand and Gardner Denver, at the time of close, ClimateCo will receive $1.9 billion in cash from Ingersoll Rand Industrial that will be funded by newly-issued debt assumed by Gardner Denver in the merger. Upon close of the transaction, existing Ingersoll Rand shareholders will receive 50.1% of the shares of IndustrialCo on a fully diluted basis, valued at approximately $5.8 billion4. Existing Gardner Denver shareholders will retain 49.9% of the shares of IndustrialCo on a fully diluted basis. The transaction is expected to be tax-free to Ingersoll Rand and Gardner Denver's respective shareholders for U.S. federal income tax purposes.

"This transaction will create a global leader in mission-critical flow creation and industrial technologies, and accelerate both companies' strategic priorities of deploying talent, driving growth, expanding margins through increased efficiencies and allocating capital effectively," said Vicente Reynal. "Gardner Denver and Ingersoll Rand's Industrial business have a combined history of over 300 years, and are both renowned for our commitment to operational excellence, innovation and quality."

Vicente Reynal added, "Together we believe we will create meaningful value for shareholders through our increased scale and reach, unmatched portfolio of iconic brands, highly compelling service and aftermarket platform, exposure to diverse and attractive end markets and geographies and the expected realization of significant synergies. We look forward to combining the strengths and talents of our teams, and providing our customers with more comprehensive solutions and broader, industry-leading product, service and aftermarket offerings."

"Ingersoll Rand has a long track record of top-tier financial performance," said Mike Lamach. "This transaction presents a compelling opportunity to unlock

significant value for all of our stakeholders through the formation of two global leaders in their respective sectors. In addition to owning one hundred percent of the ClimateCo, our shareholders will also benefit from majority ownership of IndustrialCo and the significant synergies expected to be unlocked as a result of the combination."

Mike Lamach added, "As a pure play global leader in the climate control solutions markets, we will leverage our leading brands, outstanding sales and service channels and our proven business operating system to capitalize on global sustainability megatrends that play directly to our strengths: reducing energy demand and greenhouse gas emissions and improving efficiency in buildings, homes and transportation. With greater focus, more targeted investments and a simplified business model, we believe our new company will continue to drive above GDP growth and deliver value for shareholders, customers and employees."

Following the close of the transaction, IndustrialCo intends to grant all employees of the combined company – who are not already equity eligible – with an equity award in IndustrialCo. The total amount of these awards will be approximately $150 million.

"In the same spirit in which we granted stock to our employees during Gardner Denver's IPO, we feel strongly that all employees of IndustrialCo should be owners of their business," said Peter Stavros. "We believe in fostering an ownership mentality, and that this drives motivation and engagement, something that has been clear in Gardner Denver's strong performance. We look forward to offering this equity award to all eligible employees of the combined company and working together to drive the business forward to create value for all of our shareholders."

**Insiders' Interests in the Proposed Transaction**

30.     Gardner Denver's insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders.  The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff and the public stockholders of Gardner Denver.

31.     Notably, several Company insiders have secured positions for themselves with the combined company.  For example, seven out of ten members of the combined company's board of directors will be Gardner Denver designees, including defendant Reynal who will serve as

director and CEO of the combined company, and defendant Stavros who will continue as chairman of the board of directors of the combined company.

**The Prospectus Contains Material Misstatements or Omissions**

32.    The defendants filed a materially incomplete and misleading Prospectus with the SEC and disseminated it to Gardner Denver's stockholders.  The Prospectus misrepresents or omits material information that is necessary for the Company's stockholders to make an informed decision whether to vote their shares in favor of the Stock Issuance.

33.    Specifically, as set forth below, the Prospectus fails to provide Company stockholders with material information or provides them with materially misleading information concerning: (i) the Company's, Ingersoll Rand's and the pro forma company's financial projections; (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by Baird; and (iii) Baird's and Citi's potential conflicts of interest.

***Material Omissions Concerning the Company's, Ingersoll Rand's and the Pro Forma Company's Financial Projections***

34.    The Prospectus omits material information regarding Company management's, Ingersoll Rand's, and the pro forma company's financial projections.

35.    With respect to Gardner Denver's and Ingersoll Rand's financial projections, the Prospectus fails to disclose all line items used to calculate each of the Company's and Ingersoll Rand's adjusted EBITDA and unlevered free cash flow and net income over the projection period.

36.    Additionally, the Prospectus sets forth that in connection with Baird's financial analyses, Baird reviewed, among other things:

> [ ]financial forecasts concerning the business and operations of Gardner Denver (on a pro forma basis for the merger) including the contemplated strategic, operating and cost benefits and/or synergies as well as related costs associated

with the merger (the "Expected Synergies"), as furnished to Baird, and prepared
and certified, by Gardner Denver's management for purposes of Baird's analysis.
. . .

Prospectus at 74-75.  Yet, the Prospectus fails to disclose the Expected Synergies prepared by

Gardner Denver's management and provided to Baird for use in connection with its fairness

opinion.

37.    Moreover, with respect to Baird's *Ingersoll Rand Industrial Business Discounted*

*Cash Flow Analysis ("DCF")*, the Prospectus sets forth:

> In order to assess the relative public market valuation of the Ingersoll Rand
> Industrial Business, Baird performed a discounted cash flow analysis utilizing the
> Ingersoll Rand Industrial Business's projected unlevered free cash flows (defined
> as net income excluding after-tax net interest, plus depreciation and amortization,
> less capital expenditures and increases in net working capital) from 2019 to 2023,
> as provided by Gardner Denver management. In this analysis, Baird calculated the
> present values of the unlevered free cash flows from 2019 to 2023 by discounting
> these amounts at rates ranging from 10.5% to 12.5%. Baird calculated the present
> values of the free cash flows beyond 2023 by assuming terminal values ranging
> from 10.0x to 12.0x year 2023 EBITDA.

*Id.* at 80.  The Prospectus, however, fails to disclose the Ingersoll Rand Industrial Business

unlevered free cash flows from 2019 to 2023, as well as the line items underlying the calculation

of unlevered free cash flow, utilized by Baird in its DCF analysis.

38.    The omission of this information renders the statements in the "Certain Financial

Forecasts" and "Opinion of Baird" sections of the Prospectus false and/or materially misleading

in contravention of the Exchange Act.

***Material Omissions Concerning Baird's Financial Analyses***

39.    The Prospectus describes Baird's fairness opinion and the various valuation

analyses performed in support of its opinion.  However, the description of Baird's fairness

opinion and analyses fails to include key inputs and assumptions underlying these analyses.

Without this information, as described below, Gardner Denver's public stockholders are unable

to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on Baird's fairness opinion in determining whether to vote in favor of the Stock Issuance.

40.     With respect to Baird's *Implied Valuation and Transaction Multiples* analysis, the Prospectus fails to disclose: (i) Gardner Denver's debt and tax-affected other post-employment liabilities; and (ii) Gardner Denver's cash.

41.     With respect to *The Ingersoll Rand Industrial Business Selected Publicly Traded Company Analysis*, the Prospectus fails to disclose the individual multiples and financial metrics for each of the companies analyzed.

42.     With respect to Baird's *Ingersoll Rand Industrial Business DCF*, the Prospectus fails to disclose: (i) Ingersoll Rand's unlevered free cash flows from 2019 to 2023 as well as the underlying line items; (ii) 2023 EBITDA utilized by Baird in calculating the terminal value of Ingersoll Rand;[1] (iii) the terminal values of Ingersoll Rand; (iv) the value of the Expected Synergies; and (v) quantification of the inputs and assumptions underlying the discount rates ranging from 10.5% to 12.5%.

43.     With respect to Baird's *Gardner Denver DCF*, the Prospectus fails to disclose: (i) Gardner Denver's unlevered free cash flows from 2019 to 2023 to the extent they differ from the unlevered free cash flows disclosed on page 73 of the Prospectus; (ii) 2023 EBITDA utilized by Baird in calculating the terminal value of the Company;[2] (iii) the terminal values of Gardner Denver; and (iv) quantification of the inputs and assumptions underlying the discount rates ranging from 10.5% to 12.5%.

---

[1] Ingersoll Rand's *adjusted* EBITDA is disclosed on page 74 of the Prospectus.
[2] Gardner Denver's *adjusted* EBITDA is disclosed on page 73 of the Prospectus.

44.     The omission of this information renders the statements in the "Opinion of Baird" and "Certain Financial Forecasts" sections of the Prospectus false and/or materially misleading in contravention of the Exchange Act.

**_Material Omissions Concerning Baird's and Citi's Potential Conflicts of Interest_**

45.     The Prospectus omits material information regarding potential conflicts of interest of Baird.

46.     Specifically, the Prospectus states that "[p]ursuant to its engagement, Baird will receive a transaction fee of approximately $5 million for its services, a significant portion of which is contingent upon the consummation of the merger." _Id._ at 84.  The Prospectus fails to disclose the amount of Baird's fee that is contingent upon consummation of the Proposed Transaction.

47.     Additionally, the Prospectus sets forth that:

> Baird has, in the past, provided investment banking services to Gardner Denver for which Baird received customary compensation. In May 2017, Baird served as a joint bookrunner in connection with the initial public offering of Gardner Denver's common stock. Baird also served as a joint bookrunner in connection with follow on offerings of Gardner Denver's common stock in November 2017 and May 2018.

_Id._  Yet, the Prospectus fails to disclose the compensation Baird received in connection with the prior services it has performed for Gardner Denver.

48.     Moreover, the Prospectus fails to disclose the compensation Citi has received or expects to receive in connection with its engagement as a financial advisor to the Company, as well as the amount of compensation that is contingent upon consummation of the Proposed Transaction.

49.     The Prospectus further fails to disclose the compensation Citi has received in connection with its service as a lead underwriter in the Company's initial public offering and

recent secondary offerings and as a lender in various financing transactions for the Company, as well as any other compensation Citi has received for any additional prior services it performed for Gardner Denver.

50.     Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

51.     The omission of this information renders the statements in the "Opinion of Baird" section of the Prospectus false and/or materially misleading in contravention of the Exchange Act.

52.     The Individual Defendants were aware of their duty to disclose the above-referenced omitted information and acted negligently (if not deliberately) in failing to include this information in the Prospectus.  Absent disclosure of the foregoing material information prior to the stockholder vote on the Stock Issuance, Plaintiff and the other Gardner Denver stockholders will be unable to make an informed voting decision and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**Claims Against All Defendants for Violations of Section 14(a) of the
Exchange Act and Rule 14a-9 Promulgated Thereunder**

53.     Plaintiff repeats all previous allegations as if set forth in full.

54.     During the relevant period, defendants disseminated the false and misleading Prospectus specified above, which failed to disclose material facts necessary to make the statements, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

55.     By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Prospectus.  The Prospectus was prepared, reviewed, and/or disseminated by the defendants.  It misrepresented and/or omitted material facts, including material information about the Company's, Ingersoll Rand's and the pro forma company's financial projections, the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by the Company's financial advisor, Baird, and Baird's and Citi's potential conflicts of interest.  The defendants were at least negligent in filing the Prospectus with these materially false and misleading statements.

56.     The omissions and false and misleading statements in the Prospectus are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction.

57.     By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

58.     Because of the false and misleading statements in the Prospectus, Plaintiff is threatened with irreparable harm, rendering money damages inadequate.  Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

### Claims Against the Individual Defendants for Violations of
### Section 20(a) of the Exchange Act

59.     Plaintiff repeats all previous allegations as if set forth in full.

60.     The Individual Defendants acted as controlling persons of Gardner Denver within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of Gardner Denver, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the

Prospectus filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

61.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Prospectus and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

62.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.  The Prospectus at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction.  They were, thus, directly involved in the making of the Prospectus.

63.     In addition, as the Prospectus sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction.  The Prospectus purports to describe the various issues and information that they reviewed and considered—descriptions the Company directors had input into.

64.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

65.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, promulgated thereunder, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the

Exchange Act.  As a direct and proximate result of defendants' conduct, Gardner Denver's stockholders will be irreparably harmed.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of Gardner Denver, and against defendants, as follows:

A.    Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material information identified above to Gardner Denver stockholders;

B.    In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.    Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as SEC Rule 14a-9 promulgated thereunder;

D.    Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.    Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated:  February 6, 2020

**WEISSLAW LLP**

By _____

Richard A. Acocelli
1500 Broadway, 16th Floor
New York, New York 10036
Telephone: (212) 682-3025
Facsimile: (212) 682-3010
Email: racocelli@weisslawllp.com

*Attorneys for Plaintiff*